ORIGINAL

FILED IN CLERK'S O___

DEC 17 2009

_____ N, Clerk
By: _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BEAZER HOMES USA, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. _____ |
| | ) **1:09-CV-3538** |
| ARCH INSURANCE COMPANY, | ) (Jury Trial Demanded) |
| | ) |
| Defendant. | ) **TWT** |
| | ) |
| | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT AND BREACH OF CONTRACT

Plaintiff Beazer Homes USA, Inc. ("Beazer Homes") states the following

allegations against defendant Arch Insurance Company ("Arch"):

1.     This is an action by Beazer Homes against Arch for declaratory relief

and damages for breach of contract with respect to Beazer Homes' rights under an

excess directors and officers liability insurance policy Arch sold to Beazer Homes,

effective April 1, 2006 to April 1, 2007[1] (the "Arch Policy").  Arch wrongfully has

denied coverage for claims that are covered under the Arch Policy.  Beazer Homes

---

[1] While the initial policy period was April 1, 2006 through April 1, 2007, the Arch
Policy remained in effect through April 1, 2008 by virtue of a policy extension.

seeks the following relief: (1) a declaration pursuant to 28 U.S.C. § 2201 that Arch

is obligated under the Arch Policy to pay and/or to reimburse and to indemnify

Beazer Homes' payment of losses (including but not limited to damages,

settlements and defense costs) ("Loss") it has incurred and continues to incur in

connection with underlying claims alleging that various Beazer Homes officers and

Beazer Homes itself engaged in "Wrongful Acts"[2]; and (2) an award of monetary

damages for breach of contract in the amount of the Loss that Beazer Homes has

incurred and continues to incur in connection with those underlying claims.

## PARTIES

2.    Plaintiff Beazer Homes is a Delaware corporation with its principal

place of business in Atlanta, Georgia.

3.    Upon information and belief, defendant Arch is a Missouri

corporation, with its headquarters in Kansas City, Missouri and principal place of

business in New York, New York.  Arch is a foreign insurance carrier authorized

to do business in the state of Georgia.

---

[2] Wrongful Act is a defined term in Beazer Homes' Primary Policy (which is defined *infra*), meaning: "(a) any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by an Insured Person in his or her Insured Capacity, or for purposes of coverage under Insuring Clause 3, by the Organization, or (b) any other matter claimed against an Insured Person solely by reason of his or her serving in an Insured Capacity."

2

## JURISDICTION AND VENUE

4.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

5.    Venue is proper in this court pursuant to 28 U.S.C. §1391(a) because defendant Arch is deemed to reside here and is subject to personal jurisdiction in this judicial district and because a substantial part of the events leading to Beazer Homes' claims occurred in this judicial district.

## FACTUAL BACKGROUND

### The Primary Policy and Excess Policies

6.    In April of 2006, Beazer Homes purchased several layers of what is commonly referred to as directors and officers liability insurance or "D&O" insurance.  Such policies, including those purchased by Beazer Homes, can also include insurance covering the company itself against potential securities litigation liability.

7.    Beazer Homes purchased a primary coverage policy and several excess policies in effect from April 1, 2006 until April 1, 2007.[3]  The Arch Policy

---

[3] Like the Arch Policy, addressed in note 1, *supra*, by virtue of an extension, each of these policies remained in effect through April 1, 2008.

3

is the third excess policy and the "top" layer of insurance for Beazer Homes. The Arch Policy provides Beazer Homes and certain "Insured Persons"[4] with coverage upon exhaustion of the underlying policy limits (collectively, the "Underlying Insurance").

8.    Primary coverage was provided by a $15,000,000 "Executive Liability and Entity Securities Liability" policy issued by Federal Insurance Company of the Chubb Group of Insurance Companies, policy number 8171-7771 (the "Primary Policy").

9.    The Primary Policy provides coverage to Beazer Homes and/or Insured Persons, as follows:

### Executive Liability Coverage Insuring Clause 1

1.    The Company shall pay, on behalf of each of the Insured Persons, Loss for which the Insured Person is not indemnified by the Organization and which the Insured Person becomes legally obligated to pay on account of any Claim first made against the Insured Person, individually or otherwise, during the Policy Period or, if exercised, during the Extended Reporting Period, for a Wrongful Act committed, attempted, or allegedly committed or attempted by such Insured Person before or during the Policy Period, but only if such Claim is reported to the Company in writing in the manner and within the time provided in Subsection 15 of this coverage section.

---

[4] Insured Persons are defined in the policies and are certain current or former officers.

4

*Executive Indemnification Coverage Insuring Clause 2*

2.    The [Insurer] shall pay, on behalf of the Organization[5], Loss for which the Organization grants indemnification to an Insured Person, as permitted or required by law, and which the Insured Person becomes legally obligated to pay on account of any Claim first made against the Insured Person, individually or otherwise, during the Policy Period or, if exercised, during the Extended Reporting Period, for a Wrongful Act committed, attempted, or allegedly committed or attempted by such Insured Person before or during the Policy Period, but only if such Claim is reported to the [Insurer] in writing in the manner and within the time provided in Subsection 15 of this coverage section.

*Entity Securities Coverage Insuring Clause 3*

3.    The [Insurer] shall pay, on behalf of the Organization, Loss which the Organization becomes legally obligated to pay on account of any Securities Claim first made against the Organization during the Policy Period or, if exercised, during the Extended Reporting Period, for a Wrongful Act committed, attempted, or allegedly committed or attempted by the Organization or the Insured Persons before or during the Policy Period, but only if such Securities Claim is reported to the [Insurer] in writing in the manner and within the time provided in Subsection 15 of this coverage section.

*Securityholder Derivative Demand Coverage Insuring Clause 4*

4.    The [Insurer] shall pay, on behalf of the Organization, Investigative Costs resulting from a Securityholder Derivative Demand first received by the Organization during the Policy Period or, if exercised, during the Extended Reporting Period, for a Wrongful Act committed, attempted, or allegedly committed or attempted before or during the

---

[5] The Primary Policy defines "Organization" as Beazer Homes and its subsidiaries.

US2008 1022123.7

Policy Period, but only if such Securityholder Derivative Demand is reported to the [Insurer] in writing in the manner and within the time provided in Subsection 15 of this coverage section.

10.    The Primary Policy, in Subsection 5 of the coverage section, defines

"Claim" with reference to the insuring coverage clauses above, as follows:

(1)    when used in reference to the coverage provided by Insuring Clause 1 or 2:

    (a)    a written demand for monetary damages or non-monetary relief;

    (b)    a civil proceeding commenced by the service of a complaint or similar pleading; or

    (c)    a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document,

against an Insured Person for a Wrongful Act, including any appeal therefrom.

(2)    when used in reference to the coverage provided by Insuring Clause 3:

    (a)    a written demand for monetary damages or non-monetary relief;

    (b)    a civil proceeding commenced by the service of a complaint or similar pleading; or

    (c)    a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document, but only

6

while such proceeding is also pending against an Insured Person,

against an Organization for a Wrongful Act, including any appeal therefrom.

    (3)    when in reference to the coverage provided by Insuring Clause 4, a Securityholder Derivative Demand.

11.    "Securities Claim," as used in the foregoing Insuring Clause 3, is

defined in the Primary Policy as "that portion of a Claim which:

    (a)    is brought by a securityholder of an Organization (i) in his or her capacity as a securityholder of such Organization, with respect to his or her interest in securities of such Organization, and against such Organization or any of its Insured Persons; or (ii) derivatively, on behalf of such Organization, against an Insured Person of such Organization; or

    (b)    alleges that an Organization or any of its Insured Persons (i) violated a federal, state, local or foreign securities law or a rule or regulation promulgated under any such securities law; or (ii) committed a Wrongful Act that constitutes or arises from a purchase, sale, or offer to purchase or sell securities of such Organization...

12.    "Loss," as defined in the Primary Policy, is the amounts that the

insured persons [Clause 2] or the Company [Clause 3] "becomes legally obligated

to pay on account of any covered Claim, including damages..., judgments,

settlements, pre-judgment and post-judgment interest and Defense Costs."

Defense Costs, a component of the defined insured Loss, are defined by the

Primary Policy as "that part of Loss consisting of reasonable costs, charges, fees

7

(including but not limited to attorneys' fees and experts' fees) and expenses...incurred in defending any Claim and the premium for appeal..."

13.    The first layer of excess insurance coverage above the $15,000,000 Primary Policy, providing an additional $15,000,000 of coverage, was issued by St. Paul Mercury Insurance ("St. Paul") for the policy period April 1, 2006 to April 1, 2007, bearing insurance policy number EC09000652 (the "St. Paul Policy"). Upon information and belief, St. Paul is a domestic insurer.

14.    The second layer of excess insurance coverage (above the $30,000,000 total coverage of the Primary Policy and the St. Paul Policy), providing an additional $10,000,000 in coverage, was issued by Axis Reinsurance ("Axis") for the policy period April 1, 2006 to April 1, 2007, policy number RAN725754/01/2006 (the "Axis Policy"). Upon information and belief, Axis is a domestic insurer.

15.    The Arch Policy, policy number DOX0014219-00, effective April 1, 2006 until April 1, 2007, is the third of Beazer Homes' excess insurance coverage and is immediately above the substantially exhausted Axis coverage. The Arch Policy "appl[ies] in conformance with the terms and conditions" of the Primary Policy and "in conformance with any terms and conditions further limiting or restricting coverage" in any other underlying insurance.

8

16.    Beazer completed and submitted a Chubb Insurance Group "Executive Liability and Entity Securities Liability Coverage Renewal Application" ("the Application"), signed in February 2006, as part of the process of renewing its Primary Policy with Federal Insurance Company (a Chubb Insurance Group company). The excess carriers did not require separate applications, with the exception of a so-called "warranty" letter signed in connection with the Arch Policy.

### Circumstances Implicating Need for Excess Coverage

17.    On March 29, 2007, Beazer Homes and certain current and former officers (all "Insured Persons" indemnified by Beazer Homes) were named as defendants in a class action lawsuit brought by purchasers of Beazer Homes common stock (the "Consolidated Securities Litigation").[6]

18.    In addition to the Consolidated Securities Litigation, certain former officers, covered by the policies, are part of investigations by governmental agencies. These individuals incurred Defense Costs.

19.    In the Spring of 2009, the parties to the Consolidated Securities Litigation negotiated a mutually agreeable settlement, in principle, of the lawsuit in

---

[6] See *Krantz v. Beazer Homes USA, Inc.*, Case No. 1:07-cv-00725, Doc. No. 1 (N.D. Ga., filed March 29, 2007).

9

the amount of $30.5 million. Beazer Homes' insurance carriers funded nearly all of the total settlement, and neither Beazer Homes itself nor the individual defendants (current or former officers of Beazer Homes) made any monetary contribution to the settlement. Settlement papers were filed with and preliminarily approved by the court. The class was provided with notice of the settlement, and the shareholders had the opportunity to opt-out of the class settlement.

20.    In the Summer of 2009, part of the plaintiff class, primarily consisting of mutual funds (the "Opt-Out Plaintiffs"), gave notice to Beazer that it chose to opt-out of the negotiated class settlement, at which point it became likely that those mutual funds would initiate separate litigation.

21.    On September 15, 2009, the court gave final approval to the settlement agreement in the Consolidated Securities Litigation of $30.5 million.

22.    On September 18, 2009, the Opt-Out Plaintiffs served Beazer Homes with a lawsuit[7] (the "Opt-Out Litigation"), asserting securities claims similar to those asserted in the settled class action, as well as additional claims predicated principally on the same alleged underlying conduct by Beazer but based on different legal theories and proof requirements.

_____

[7] See *Franklin Mutual Beacon Fund, et al v. Beazer Homes USA, Inc.*, Case No. 1:09-cv-02578, Doc. 1 (N.D. Ga., filed Sept. 18, 2009).

10

23. Beazer Homes' primary and underlying excess insurance carriers have made payments under their policies in response to Beazer Homes' Loss arising out of the Consolidated Securities Litigation and above described governmental investigations. In connection with the aforementioned Loss, Federal Insurance Company has made payments pursuant to the Primary Policy exhausting the $15,000,000 policy limit of the Primary Policy.

24. Following exhaustion of the Primary Policy, reimbursement requests for Loss arising out of the Consolidated Securities Litigation, including funding for the Consolidated Securities Litigation, was claimed under the policy sold by the first level excess carrier, St. Paul, pursuant to the terms of the St. Paul Policy. St. Paul accepted coverage under its policy and has made payments exhausting its $15,000,000 policy limits.

25. Following exhaustion of the St. Paul Policy, reimbursement requests for Loss arising out of covered claims, including the Consolidated Securities Litigation and governmental investigations, as well as funding for the Opt-Out Litigation, was and has been claimed under the policy sold by the second level excess carrier, Axis, pursuant to the terms of the Axis Policy. Axis accepted coverage under its policy. As of December 14, 2009, Axis has paid approximately

11

$6,333,952 of the $10,000,000 policy limit, leaving $3,666,048 in remaining coverage under the Axis Policy.

## Insurance Policy at Issue

26.    In Section I, the Arch Policy declares that it affords "coverage for Claims[8] in excess of the Underlying Insurance…in conformance with the terms and conditions of the [Primary] Policy," subject to certain limited exceptions.

27.    The Arch Policy, is intended to be part of a seamless program of excess coverage.  In particular, Arch's obligation to make payments under the Arch Policy is triggered upon the "depletion" or "exhaustion" of the aggregate limit of the underlying policies "due to payment in connection with Claim(s)."

28.    The purpose of this provision is to make certain that the policyholder does not suffer a "gap" in the reimbursement of insurance proceeds as it continues to incur Loss and make payments that are covered under its policies.

29.    Arch received substantial premiums to provide seamless excess liability coverage without any gaps in coverage should the carrier directly below Arch, here Axis, exhaust its policy limits.

---

[8] Defined in the Arch Policy as having "the same meaning in this Policy as given to it in the [Primary] Policy."

12

### Arch Has Denied That It Is Obligated To Provide Coverage

30.    In March 2007, Beazer Homes notified its insurance carriers, including Arch, of the Consolidated Securities Litigation, which was predicated principally on the same underlying alleged conduct as the currently pending Opt-Out Litigation.

31.    After notifying Arch of the March 29, 2007 Consolidated Securities Litigation, Beazer Homes communicated with its carriers, including Arch, to keep the carriers apprised of the Litigation.

32.    In or about March 2009, Beazer Homes notified its insurance carriers, including Arch, that it would be involved in settlement negotiations to resolve the Consolidated Securities Litigation and requested settlement authority that would implicate each of the carriers' policies.

33.    Beazer Homes and Arch continued to engage in communications through the period of the Spring 2009 settlement negotiations in the Consolidated Securities Litigation.

34.    As indicated above, on September 15, 2009, the court accepted a settlement in the Consolidated Securities Litigation of $30.5 million. The Opt-Out Plaintiffs filed the Opt-Out Litigation against Beazer Homes on September 18, 2009.

13

35.    By letter dated September 23, 2009, Beazer Homes notified Arch of the Opt-Out Litigation and submitted it for coverage under the Arch Policy, upon depletion of the Axis Policy.

36.    Arch admitted that the Opt-Out Litigation, as a related claim to the Consolidated Securities Litigation, is subject to coverage under the Arch Policy.

37.    On November 23, 2009, Arch wrongfully denied coverage for Beazer Homes in connection with the Opt-Out Litigation. Although Arch cites various provisions of the policy in asserting reservations to coverage under the Arch Policy, Arch's sole ground for denying coverage is the assertion that Beazer Homes purportedly breached a so-called "warranty" letter. Arch's assertion is not supported in fact or under applicable law, and cannot justify a denial of coverage.

38.    Arch's refusal to provide insurance coverage for the Opt-Out Litigation and other covered Claims is contrary to the terms of the Arch Policy and applicable law.

39.    Arch was paid substantial premiums by Beazer Homes with the reasonable expectation that, pursuant to the Arch Policy, Arch would provide insurance coverage to Beazer Homes consistent with the terms of the Arch Policy.

40.    In addition to the significant costs Beazer Homes has already incurred in investigating and defending the Opt-Out Litigation, Arch's breach of its

14

contractual obligations has forced Beazer Homes to incur additional expenses, including legal fees and costs in prosecuting this action to enforce its contractual rights to coverage under the Arch Policy, which will increase on a daily basis.

## COUNT I
## DECLARATORY RELIEF REGARDING COVERAGE

41.    Plaintiff incorporates the averments set forth in paragraphs 1 through 40 as if fully set forth herein.

42.    There is an actual and justiciable controversy between Beazer Homes and Arch in this case, arising out of Arch's refusal to honor its contractual obligations to indemnify Beazer Homes or otherwise to acknowledge coverage under the Arch Policy for the Loss incurred by Beazer Homes in responding on its own behalf, and on behalf of Insured Persons, to the underlying Claims, including the Opt-Out Litigation.

43.    Arch's refusal to advance costs and its denial of all coverage for Beazer Homes related to the Opt-Out Litigation and underlying Claims has generated a case or controversy that should be resolved by this Court.

44.    A declaration of rights pursuant to 28 U.S.C. § 2201 would alleviate the uncertainty currently facing Beazer Homes with respect to the losses, costs, attorneys' fees and expenses that Beazer Homes has incurred and will continue to

15

incur as a result of the underlying Claims, including the Opt-Out Litigation, and in connection with enforcing its contractual rights under the Arch Policy.

45.    Beazer Homes now seeks an affirmative declaration that: (1) Arch is obligated, under the Arch Policy, to reimburse Beazer Homes for Loss it has incurred and continues to incur in connection with the underlying claims, including the Opt-Out Litigation; (2) Arch has a duty to provide its policyholder, Beazer Homes, with coverage under the Arch Policy up to its policy limits.

## COUNT II
## BREACH OF CONTRACT

46.    Beazer Homes incorporates the averments set forth in paragraphs 1 through 45 as if fully set forth herein.

47.    Beazer Homes has complied in full with all conditions precedent under the Arch Policy.

48.    Arch has breached is obligations under the Policy by refusing to indemnify Beazer Homes for its covered Loss.

49.    As a direct and proximate result of its contractual breaches, Arch has deprived Beazer Homes of the benefit of the insurance coverage for which Beazer Homes paid substantial premiums and as a result thereby has proximately caused

16

or will proximately cause Beazer Homes to incur monetary losses in an amount in excess of $75,000 and which will be proven at trial.

WHEREFORE, Beazer Homes respectfully prays that:

(a)     Judgment be entered declaring that Arch has a duty to provide coverage to Beazer Homes for the underlying claims, including the Opt-Out Litigation, indemnifying Beazer Homes, as required by the Arch Policy, for Losses and Defense Costs incurred in connection with the underlying claims, including the Opt-Out Litigation;

(b)     Beazer Homes be awarded monetary damages for breach of contract in an amount sufficient to compensate Beazer Homes for the losses, costs, and expenses, including attorneys' fees, it has incurred on behalf of itself and Insured Persons in connection with the defense of the Opt-Out Litigation;

(c)     Beazer Homes be awarded its attorneys' fees and other expenses incurred in bringing and prosecuting this action pursuant to O.C.G.A. § 13-6-11; and

(e)     Beazer Homes be awarded such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby make a demand for a trial by jury of all issues so triable.

17

Respectfully submitted this _17th_ day of December, 2009.

William H. Boice
Georgia Bar No. 065725
Betsy C. Neal
Georgia Bar No. 161820
Kilpatrick Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
Tel. (404) 815-6500
Fax (404) 815-6555
bboice@kilpatrickstockton.com
bneal@kilpatrickstockton.com

Barry J. Fleishman
Kilpatrick Stockton LLP
607 14th Street, NW, Suite 900
Washington, DC 20005
Tel. (202) 508-5800
Fax (202) 508.5858
bfleishman@kilpatrickstockton.com

*Attorneys for Plaintiff*

18